**William V. WESTON, Appellant,**

v.

**Richard M. DONNELLY, Appellee.**

No. 90–1704.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 10, 1990.

Decided Feb. 28, 1991.

Randy M. Smith, St. Louis, Mo., for appellant.

Mark D. Mittleman, St. Louis, Mo., for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOODS,* District Judge.

BRIGHT, Senior Circuit Judge.

William V. Weston brought suit against Richard M. Donnelly to recover payment of a promissory note or, alternatively, to recoup the investment that Donnelly allegedly fraudulently induced him to make. Donnelly denied the allegations, asserting that he and Weston had formed a partnership, and counterclaimed for a partnership accounting. After a three-day bench trial, the district court denied Weston's claims and granted Donnelly relief on the counterclaim.

On appeal, Weston alleges that the district court erred in: (1) finding that the promissory note did not represent a bona fide loan; (2) failing to enter judgment for Weston on his fraud claim; (3) failing to apply the statute of frauds to Donnelly's counterclaim; and (4) calculating damages. Donnelly requests that this court impose sanctions upon Weston for bringing this appeal. We affirm the judgment of the district court and deny Donnelly's request for sanctions.

## I. BACKGROUND

We summarize only those facts pertinent to this appeal. Prior to October 1983, Donnelly and Robert Narmont each held a fifty percent interest in a partnership known as Land Trust 81–102. The partnership owned a vacation home located in Clearwater, Florida as its primary asset, along with the home's furnishings and an Oldsmobile car. Although Donnelly held legal title to the home in his name, Donnelly and Narmont had entered into a written agreement of partnership.

In October 1983, after repeated requests by Donnelly, Weston agreed to buy out Narmont's share and become a partner with Donnelly in the ownership of the house. Donnelly and Narmont dissolved the land trust partnership and Weston and

Donnelly then engaged in the following actions which form the basis of this dispute.

On October 1, 1983, Weston executed and delivered a check to Donnelly for $26,-107.80. On the same day, Donnelly signed an instrument in the form of a note promising to repay Weston the same amount on demand, with no interest. On October 5, 1983, Narmont received a $26,125.76 check from Donnelly for his share of the land trust partnership.

Subsequent to these transactions, Weston stayed at the Florida home on at least eight separate occasions. He admits that he used the home as a vacation retreat for his family and friends. With regard to a week-long stay at the home in December 1983, Weston testified at trial that he assumed at that time that he owned the home.

On numerous occasions, Weston held himself out as a partner with Donnelly in the "Cheshire Partnership." In December 1983, the parties obtained automobile insurance for the Oldsmobile "d/b/a Cheshire Partnership." Shortly thereafter, on February 14, 1984, both parties signed and filed a Registration of a Fictitious Name with the State of Missouri, registering themselves as equal partners in the Cheshire Partnership.

Likewise, in February 1984, Weston filed a personal financial condition form with the Mark Twain Parkway Bank in order to secure a note to cover the mortgage on the Florida home. Weston listed as personal assets a one-half interest in the Florida house and its furnishings as well as the Oldsmobile, with title in the name of the Cheshire Partnership. Notably, Weston did not list the promissory note as an asset. On March 19, 1984, Weston and Donnelly, acting in their capacities as partners of the Cheshire Partnership, signed a note for $100,000 with the Mark Twain Parkway Bank.

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

Weston also advanced $13,000 to the partnership account through Donnelly for improvements to the house. In the spring of 1984, while Robert Narmont was admiring the improvements to the property, Weston commented on the property's increased value and that he was proud of his investment.

The Cheshire Partnership and its partners, Weston and Donnelly, filed Schedule K–1 and Form 1065 partnership tax returns for the years 1984, 1985, 1986 and 1987. Donnelly's trial testimony indicated the partnership began October 1, 1983, despite the fact that no partnership return or K–1 was prepared for 1983.

In April 1985, Weston's business failed and he told Donnelly he wanted all his money back. The parties met with accountant Ronnie D. Hopper in June 1985, but Weston did not agree with the accountant's valuation of the partnership. On July 2, 1985, Weston's attorney sent a demand letter to defendant seeking payment of $26,170.80. Donnelly did not respond.

From July 1985 until March 1988, Donnelly paid the interest on the partnership notes and also paid the upkeep expenses. On March 11, 1988, Donnelly sold the Florida house for $110,000. The Florida property had remained in Donnelly's name until it was sold.

Weston then brought this suit, alleging failure to pay the promissory note and that Donnelly fraudulently induced him to enter into the transactions at issue. Weston characterized his transactions with Donnelly as a personal loan with an agreement to form a partnership at a subsequent date. According to Weston, he was involved in divorce proceedings at the time of the transactions and therefore would not purchase any property at that time.

Donnelly responded by denying the validity of the note, claiming it represented Weston's contribution to the formation of the partnership, and filing a counterclaim for a partnership accounting. Donnelly claimed that the transactions constituted a present investment in the partnership and that he executed the promissory note to Weston merely as a device to hide the purchase of the vacation home from Weston's wife.

After a three-day bench trial, the district court entered judgment in favor of Donnelly on all claims. The district court found that the promissory note did not represent a bona fide loan but rather an investment in the partnership. The court also concluded that Weston had not proven that Donnelly fraudulently induced him into entering the partnership.

With respect to the counterclaim, the district court rejected Weston's assertion that the statute of frauds barred Donnelly's action for a partnership accounting. The district court found a partnership existed between Donnelly and Weston and that Weston had repudiated the partnership by filing the present suit, justifying an accounting. The trial court ordered Weston to pay Donnelly $18,613.60 for his deficiency interest in the partnership and $297.75 for the wind-up costs of dissolving the partnership.

## II. DISCUSSION

### A. Promissory Note

Weston challenges the district court's finding that the promissory note executed by Donnelly did not represent a bona fide loan but rather an investment in the partnership. Weston has utterly failed to sustain his burden of establishing that this finding is clearly erroneous. After reviewing the record, we are satisfied that the record abundantly supports the court's finding. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We therefore affirm the district court's determination.

### B. Fraud Claim

Weston asserts that the district court erred in denying his claim for relief due to Donnelly's alleged fraud. Under Missouri law, "[t]he plaintiff bears the burden of proof for each element of fraud, and must satisfy that burden with clear and convincing evidence." *Centerre Bank of Independence, N.A. v. Bliss*, 765 S.W.2d 276, 284 (Mo.Ct.App.1988) (citations omitted).

Fraud "may not be presumed, and a party's case will fail if he can show only facts and circumstances which are equally consistent with honesty and good faith." *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1218 (8th Cir.1985).

The district court determined that Weston failed to meet his burden of proof on the issue of fraud. The record supports that interpretation of the evidence and we will not disturb it on appeal.

### C. Statute of Frauds

Weston claims the district court erred in failing to apply Missouri's statute of frauds, which bars actions upon oral contracts for the sale of an interest in the land. *See* Mo.Ann.Stat. § 432.010 (Vernon 1952). According to Weston, the partnership claim rests on Donnelly's alleged sale of an equitable one-half interest in the Florida home and its furnishings. Weston argues, therefore, that the claim for a partnership accounting is barred by the statute of frauds because the partnership contract involved the transfer of land but was never reduced to writing. Weston specifically argues that the district court applied the wrong law in reaching its conclusion.

While we agree that the case the district court relied on is not dispositive,[1] we nonetheless uphold the district court's conclusion that the statute of frauds does not bar Donnelly's counterclaim under the doctrine of part performance. *See Stoetzel v. Continental Textile Corp. of Am.*, 768 F.2d 217, 222 (8th Cir.1985) (court may affirm on any ground supported by the record that was raised before the trial court and on appeal).[2]

■ In general, the doctrine of part performance operates to except certain agreements that have been partially performed

from the operation of the statute of frauds. Missouri courts have declared that

> [i]n the sale of land, possession by the vendee in pursuance of the contract of sale, without more, has been held to be sufficient part performance to take the case out of the operation of the statute of frauds. If the possession is accompanied by the erection of improvements upon the land, the courts in this state have always held the acts sufficient to take the contract out of the statute.

*Ross v. Alyea*, 197 S.W. 268, 270 (Mo.1917) (citations omitted); *see also Anderson v. Abernathy*, 339 S.W.2d 817, 822–23 (Mo. 1960) (possession of land, accompanied by erection of improvements, sufficient to take contract out of statute of frauds).

■ Here, the facts clearly establish possession and improvements by Weston. The district court found that Weston stayed in the Florida house one week to ten days in December 1983. With regard to that stay, Weston testified that he assumed he owned the entire property at that time. Weston also stayed at the house on seven separate occasions between March and December of 1984.

Furthermore, the district court found that both parties contributed to improvements to the house in an effort to realize an appreciation in value. Specifically, the court found that Weston advanced $13,000 to Donnelly for improvements to the house. In the spring of 1984, while Robert Narmont visited the property and admired the new additions, Weston commented on the property's increased value and that he was proud of his investment.

Additionally, there are numerous written items evidencing the partnership. The uncontroverted evidence established that both parties signed and filed a Registration of

---

1. The district court relied upon *Grissum v. Reesman*, 505 S.W.2d 81 (Mo.1974), in determining that the statute of frauds did not bar Donnelly's claim for a partnership accounting. However, the *Grissum* court never dealt with the issue of the application of the statute of frauds as it relates to the transfer of land in the formation of a partnership. The portion of *Grissum* discussing the statute of frauds relates to the requirement that contracts not capable of performance within a year must be reduced to

writing, not to the requirement that transfers of an interest in land must be reduced to writing. *Id.* at 88–89. Thus, the case fails to resolve the issue presented here.

2. The record establishes that Donnelly raised the defense of part performance to the bar of the statute of frauds both at trial and to this court.

Fictitious Name with the State of Missouri, registering themselves as equal partners in the Cheshire Partnership. Weston also filed a personal financial condition form to secure a note to cover the mortgage on the Florida property in which he listed, as an asset, a one-half interest in the house, furnishings and Oldsmobile, with title in the name of the Cheshire Partnership. Later, both parties signed a $100,000 note as partners of the Cheshire Partnership.

In light of the abundant written material evidencing the Cheshire Partnership, as well as Weston's own admissions, we make the determination, based on the district court's findings, that Weston's performance was referable to and done in pursuance of the partnership contract. *See Grissum*, 505 S.W.2d at 88.

Under the circumstances, we conclude that the underlying facts, as found by the district court, establish sufficient part performance by Weston to take the oral partnership contract out of the operation of the statute of frauds.

### D. Damage Calculation

Weston contends that the district court erred in calculating Donnelly's damage awards. According to Weston, the district court erred by failing to credit Weston with his initial cash contributions as required under Missouri law. We reject Weston's contention.

■ A partnership accounting is governed by Mo.Ann.Stat. § 358.400 (Vernon 1968). Pursuant to that statute, partnership assets must be applied to satisfy outstanding debt in the following order:

(a) Those owing to creditors other than partners;

(b) Those owing to partners other than for capital and profits;

(c) Those owing to partners in respect of capital;

(d) Those owing to partners in respect of profits.

Mo.Rev.Stat. § 358.400(2). The outstanding partnership liabilities owed to Donnelly for expenses incurred on behalf of the partnership were for expenses other than capital and profits. Thus, under the statute, those debts had to be completely satisfied before the partners could recoup their capital contributions.

■ In the present case, however, the partnership was operating at a loss and lacked sufficient assets to satisfy the debts which must be paid before the partners may seek a return of their capital contributions. Thus, there was no reason for the district court to consider Weston's capital contribution in its damage calculations. Put simply, both partners lost their capital contributions because the partnership's higher priority debts exceeded its assets.

■ Weston also asserts that the district court erroneously assessed a charge for certain accounting fees against him twice: first in the partnership accounting and then in determining the costs of winding up the partnership. Weston fails to support this assertion and we therefore reject it. Bare assertions of fact, unsupported by proof, will not suffice to overturn the considered decision of the district court.

### E. Sanctions

Donnelly requests this court to find that Weston's appeal lacked sufficient merit so as to warrant relief pursuant to Fed.R. App.P. 38.[3] We believe Weston's case merited an appeal, even though not successful. We therefore deny Donnelly's request.

### III. CONCLUSION

Accordingly, we affirm the judgment of the district court.

---

**3. Rule 38. Damages for Delay**
　If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

Fed.R.App.P. 38.