# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 09-6029

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Robert Glen and Karen Jean Glen, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Darrell Marcusen and Judy Marcusen, | * | |
| | * | |
| Plaintiffs - Appellees. | * | Appeal from the |
| | * | United States |
| v. | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Robert Glen and Karen Jean Glen, | * | |
| | * | |
| Defendants - Appellants. | * | |

Submitted: February 23, 2010
Filed: April 9, 2010

Before SCHERMER, FEDERMAN and SALADINO, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Robert Glen and Karen Jean Glen (the "Glens") appeal from an Order for Judgment and Amended Judgment[1] entered by the bankruptcy court, liquidating the

---

[1]After the entry of the bankruptcy court's Order for Judgment and Judgment, the parties filed a stipulation, seeking to modify the Judgment to clarify the amount. Thereafter, the bankruptcy court entered an Amended Judgment to reflect the stipulation of the parties.

amount of a debt owed by the Glens to Darrell and Judy Marcusen (the "Marcusens") and excepting the debt from the Glens' discharge pursuant to section 523(a)(2)(A) of title 11 of the United States Code (the "Bankruptcy Code").[2] We have jurisdiction over this appeal from the final order and judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

## ISSUES

The issues on appeal are whether: (1) the bankruptcy court erred in finding that the Marcusens established the elements of fraud under section 523(a)(2)(A) of the Bankruptcy Code based on the theory that Glens devalued the Marcusens' security interests when the Glens concealed the existence of the Marcusens' liens from subsequent lenders and concealed the transactions with subsequent lenders from the Marcusens, while the Marcusens never recorded the mortgages; and (2) monies loaned prior to the fraudulent representation constituted a proper measure of damages. We conclude that the bankruptcy court erred when it determined that the Glens committed fraud and, accordingly, any award of damages for fraud was improper.

## BACKGROUND

Karen Glen and Darrell Marcusen are brother and sister. The business relationship between them began in 2003, when the Glens approached the Marcusens about participating in the construction and sale of homes in Winona, Minnesota. The Glens had just moved to Minnesota from California, where Robert

---

[2]The bankruptcy court also considered whether the Marcusens could make a claim under 11 U.S.C. §523(a)(2)(B). The Marcusens did not appeal from the bankruptcy court's findings under section 523(a)(2)(B). Accordingly, we do not consider that portion of the bankruptcy court's decision on appeal.

Glen had gained experience in home development. The Marcusens were inexperienced in real estate development.

The Glens suggested that the Marcusens, rather than a bank, finance the construction of the projects. The Glens would build the homes and oversee the construction and sales of them. The agreement contemplated that the parties would split the profits from the sales equally. The Marcusens agreed to participate in the project. The Marcusens claim that at the parties' initial meeting in 2003 and at some point in time thereafter, the Glens assured the Marcusens that, even if third-party purchasers did not buy the houses, the Marcusens would have the houses as security.

The first home was to be built on Lot 22, which was owned by the Glens. Some time after the initial 2003 meeting between the parties, the Marcusens asked the Glens how they would be protected in the event that something were to happen to the Glens. The Glens sought the advice of an attorney. In response, in February of 2004, the Glens executed a promissory note to the Marcusens for the amount of $125,000.00, secured by a mortgage on Lot 22. The Glens' attorney drafted the promissory note and mortgage and sent the executed note and mortgage to the Marcusens. The Marcusens held the original note and mortgage for Lot 22, but they did not record the mortgage. The house on Lot 22 sold and the Marcusens received a significant return on their investment. The Marcusens agreed to participate in another similar project.

The Glens executed a promissory note, dated September 1, 2004, to the Marcusens in the amount of $175,000.00. The promissory note was secured by a mortgage on Lot 23 which was fully executed in December of 2004. The parties disagree regarding whether the Glens held the original mortgage for Lot 23 or gave it to the Marcusens. They did not dispute that the Marcusens held a copy of the

mortgage for Lot 23 and that the Marcusens did not record the mortgage for Lot 23.

The Marcusens made advances in the amount of approximately $175,000.00 for the construction on Lot 23. By early 2005, the Marcusens were apprehensive about their investment and they demanded repayment of it. Friction had developed between the parties and their communications were sporadic. The Marcusens advised the Glens that they would not extend any further financing. The last large advance was extended by the Marcusens in February of 2005.

The Glens submitted a Uniform Residential Loan Application to Winona National Bank (the "Bank") in June of 2005. In their Uniform Residential Loan Application, they failed to disclose the Marcusens unrecorded mortgage on Lot 23. Also in June of 2005, the Glens signed a promissory note to the Bank for the amount of $160,000.00, secured by a mortgage on Lot 23. The Glens paid the Marcusens $20,000.00 out of the loan they obtained from the Bank. The Glens did not timely inform the Marcusens about their transactions with the Bank. The Bank recorded its mortgage. In July of 2007, the Glens sold the property on Lot 23. The Bank's recorded mortgage was satisfied out of the proceeds from the sale. The Marcusens received nothing.

Meanwhile, the Marcusens had agreed to participate in a third project, this time for construction of a house on Lot 6. The Glens executed a third promissory note, dated November 1, 2004, for the amount of $50,000. The promissory note was secured by a mortgage on Lot 6 which was fully executed in December of 2004. The trial court found that the Glens held the original note and mortgage for Lot 6. The parties did not dispute that the Marcusens held a copy of the mortgage for Lot 6 and that the Marcusens did not record the mortgage for Lot 6.

4

The Marcusens advanced approximately $43,000.00 for the construction on Lot 6. In their Amended Stipulation of Facts for trial, the parties agreed that "[i]n December 2004 and January 2005, [the Marcusens] made advances totaling $38,916.03 to finance the construction of the spec house on Lot 6." The last advance for Lot 6 was made on October 4, 2005.

Later, on October 18, 2005, to free up the capital for the intended construction of a home on a fourth lot, the Glens gave a mortgage on Lot 6 to a third party developer, Sunny Acres Development, LLC ("Sunny Acres"). Sunny Acres recorded its mortgage on October 19, 2005. The Glens did not disclose to Sunny Acres that the Marcusens had an unrecorded mortgage on Lot 6. Likewise, they did not timely inform the Marcusens about the transaction with Sunny Acres. When Sunny Acres later foreclosed its mortgage on Lot 6, the Marcusens received nothing.

The Glens did not pay the Marcusens for most of the advances that the Marcusens made on the promissory notes for Lots 23 and 6.

The Glens filed their voluntary petition for relief under chapter 7 of the Bankruptcy Code in June of 2008. Subsequently, the Marcusens commenced this adversary proceeding, seeking to except debts owed by the Glens to them from the Glens' discharge pursuant to sections 523(a)(2)(A) and (a)(2)(B) of the Bankruptcy Code. After a trial in May of 2009, the bankruptcy court found that the evidence was insufficient to show that the Glens committed fraud when the Marcusens made their investments, but held that the Glens defrauded the Marcusens "in the destruction of the [Marcusens] valuable mortgage interests in properties involved in [the projects on Lots 23 and 6]." The trial court based its determination of fraud on the Glens' failure to disclose to the Bank and Sunny Acres that the Marcusens had unrecorded mortgages in Lots 23 and 6, and the Glens' failure to timely inform

5

the Marcusens about the Glens' transactions with the Bank and Sunny Acres. The Glens appealed.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997); *Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999). Whether a requisite element of a claim under Section 523(a)(2)(A) is present is a factual determination that is reviewed for clear error. *Pontow*, 111 F.3d at 609; *Fee v. Eccles (In re Eccles)*, 407 B.R. 338, 341 (B.A.P. 8th Cir. 2009)*;Moen*, 238 B.R. at 790. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (*quoting U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

## DISCUSSION

Bankruptcy Code Section 523(a)(2)(A) excepts certain debts from discharge. It provides, in pertinent part, that a discharge:

> does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
> 11 U.S.C. §523(a)(2)(A).

6

A creditor's success in a non-dischargeability action under Section 523(a)(2)(A) requires that creditor to prove, by a preponderance of the evidence, that: (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the misrepresentation. *Field v. Mans,* 516 U.S. 59, 74 (1995)(justifiable reliance)*; Grogan v. Garner*, 498 U.S. 279, 291 (1991)(burden of proof)*; Moen,* 238 B.R. at 790(elements of proof under section 523(a)(2)(A)).

Our decision in this case rests, in large part, on the fact that the fraud found by the trial court did not involve misrepresentations that were contemporaneous in timing with the Glens' obtaining of money, property, services or credit. It is also crucial that the Glens did not intend to deceive the Marcusens when the alleged misrepresentations were made.

**False Representation**

The record on appeal and arguments of the parties require us to consider three possible misrepresentations, made at two points in time. The first point in time was when the Marcusens made their investments in Lots 23 and 6. Neither party has contested the bankruptcy court's finding that "the record cannot sustain. . . a finding" that the Glens induced the Marcusens to make investments by fraud. The bankruptcy court's decision was correct in this respect.

The next two false representations allegedly occurred when the Glens obtained additional financing from the Bank and Sunny Acres and provided them with mortgages in 2005. The bankruptcy court adopted this later date as the date for the fraud. The allegedly false representations were concealing the: (1) Marcusens' unrecorded mortgages from the Bank and Sunny Acres; and (2) transactions with the

Bank and Sunny Acres from the Marcusens. Specifically, with respect to Lot 23, the bankruptcy court found that "the [Glens'] fraud on the [B]ank was also an actual fraud on [the Marcusens]" because by concealing from the Marcusens the fact that the Glens failed to disclose to the Bank the Marcusens' unrecorded mortgage interest in Lot 23, the Glens "knowingly and intentionally deceived the [Marcusens] and destroyed the value of the [Marcusens'] mortgage interest in [Lot 23]." With respect to Lot 6, it found that by concealing the Marcusens' mortgage on Lot 6 from Sunny Acres and "not timely disclosing the [transaction with Sunny Acres] to the [Marcusens], the [Glens] knowingly and intentionally deceived the [Marcusens] and destroyed the value of their mortgage interest in the property."

The Glens' concealment of the Marcusens' unrecorded mortgages from the Bank and Sunny Acres could not constitute a misrepresentation to the Marcusens. Rather, they were only misrepresentations to the Bank and Sunny Acres.

To the extent that the alleged misrepresentations concerned the Glens' failure to disclose the transactions with the Bank and Sunny Acres to the Marcusens, the Marcusens claim that the Glens assured them that they would have the houses to fall back on if anything were to happen. The Marcusens interpreted these alleged assurances to mean that the Glens would not impair the Marcusens' liens on Lots 23 and 6.

The Glens could not have made the alleged misrepresentation to the Marcusens in 2005 when they gave liens to the Bank and Sunny Acres because, by that time, the Glens had already given the Marcusens their liens on the same properties. If the Marcusens had properly recorded the mortgages, the liens to the Bank and Sunny Acres would have been junior to the Marcusens' liens.

The bankruptcy court found the Marcusens' testimony to be credible. However, we cannot see how the Marcusens demonstrated that any of the Glens' alleged

assurances were made after the time when the mortgages were given in December of 2004. Rather, the Marcusens testified about assurances that were made at their initial meeting with the Glens in 2003. They also referenced comments that the Marcusens made to them generally, but they failed to show that the Glens made any representations after they were given liens on the properties in December of 2004.

**Intent to Deceive**

To establish fraud, a representation must be made deliberately and intentionally with the intent and purpose of deceiving. *Lindau v. Nelson (In re Nelson),* 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). The Glens did not intend to deceive the Marcusens when their alleged misrepresentation was made. Rather, the Glens intended to protect both their investment and the Marcusens' investment in the projects.

The Glens obtained the loans from the Bank and Sunny Acres because they needed more money to complete the projects on Lots 23 and 6. Shortly after receiving the $160,000.00 loan from the Bank, the Glens paid the Marcusens $20,000.000 of it. Moreover, the Marcusens have not shown that the Glens used the remaining proceeds of the loans from the Bank and Sunny Acres for any purpose other than to try to enhance the parties' investments.

The determination that the Glens lacked the requisite intent to deceive for a finding of fraud is further supported by the bankruptcy court's acknowledgement that the Glens acted to protect the Marcusens' investment. It stated that "what [the Glens] did was sacrifice the [Marcusens'] equity in Lot 23 in hopes of priming the projects and getting a greater return on them, which would include a return for themselves as well as the [Marcusens]."

**Money Obtained By Fraud**

Even if the Glens had made false representations to the Marcusens in 2005 with the intent to deceive them, the Glens did not obtain funding from the Marcusens based on the alleged fraud. The plain language of section 523(a)(2)(A) requires, as a prerequisite to a determination of nondichargeability, that the debt be "for money, property, services, or an extension, renewal or refinancing of credit, **to the extent obtained by** . . . fraud." 11 U.S.C. §523(a)(2)(A)(emphasis added). The Glens obtained financing from the Marcusens for Lots 23 and 6 before the alleged fraud took place and not as a result of the alleged fraud. In fact, the Glens sought additional financing from the Bank and Sunny Acres specifically because the Marcusens would not contribute more money to the projects.

The Marcusens' last large advance for the construction on Lot 23 was made in February of 2005. The Glens did not complete their Uniform Residential Loan Application to the Bank until June of 2005. They did not give the Bank a mortgage on Lot 23 until June of 2005.

The financing for Lot 6 was also complete before the Glens gave a mortgage to Sunny Acres on that property. The Marcusens extended a total amount of approximately $43,000 for construction on Lot 6. Of the approximately $43,000.00, $38,916.03 was provided in December of 2004 and January of 2005. The remaining amount of the financing was extended on October 4, 2005. Sunny Acres did not obtain its mortgage on Lot 6 until October 18, 2005.

**Damages**

In their brief, the Glens argue that the Marcusens failed to prove damages for fraud because the Marcusens loaned money to the Glens prior to the false statements and, accordingly, the money was not loaned as a proximate result of the

misrepresentations. Because the Marcusens failed to meet their burden of proving fraud otherwise under section 523(a)(2)(A), we do not need to analyze the issue of damages other than to say that the bankruptcy court's award of damages was improper.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is REVERSED.

---