# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2031

_____

In re: Robert Glen,                                    *
                                                       *
                        Debtor.                        *
                                                       *
Karen Jean Glen,                                       *
                                                       *
                        Debtor.                        *
_____                                An Appeal from a Decision of the
                                                       the Eighth Circuit Bankruptcy
Darrell Marcusen, Judy Marcusen,      *                Appellate Panel
                                                       *
                        Appellants,                    *
                                                       *
            v.                                         *
                                                       *
Robert Glen, Karen Jean Glen,         *
                                                       *
                        Appellees.                     *

_____

Submitted: December 14, 2010
Filed: April 12, 2011

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Darrell and Judy Marcusen (the Marcusens) entered into a real estate financing agreement with Darrell's sister, Karen Glen, and her husband, Robert (the Glens).

The Glens developed the properties and the Marcusens provided the financing. After the projects failed, the Glens filed for Chapter 7 bankruptcy, and the Marcusens sought to have their debt excepted from discharge. The bankruptcy court found that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Bankruptcy Appellate Panel (BAP) reversed. Marcusen v. Glen (In re Glen), 427 B.R. 488 (B.A.P. 8th Cir. 2010). We affirm the BAP's decision.

## I. Background

The Glens were interested in building homes in Winona, Minnesota. In June 2003, they met with the Marcusens to discuss financing the construction of homes and sharing the profits from the home sales. The Marcusens decided to invest and thus refinanced their home to obtain funds with which to fund the construction projects.

The Marcusens disbursed $125,000 to finance the building of the first home, which was located on lot 22. The Marcusens expressed their desire for some documentation to protect their investment in the lot in case something happened to the Glens. In response, the Glens' attorney prepared a promissory note and mortgage, which he sent to the Marcusens, along with a letter stating that the mortgage had not been recorded, that it would cost the Glens a $20.00 recording fee and a $287.50 registry tax to record the mortgage, and that he had advised the Glens not to record the mortgage but to forward it to the Marcusens. The Marcusens did not record the mortgage. Following the sale of the home on lot 22, the Marcusens received a check for $139,000, including $14,000 as their share of the profits. In light of the success of the lot 22 project, the Marcusens agreed to finance additional real estate projects, including those on lots 23 and 6.

The Marcusens advanced the Glens approximately $175,000 to finance the construction of a home on lot 23. The Glens executed a $175,000 promissory note in favor of the Marcusens, secured by a mortgage on lot 23. The Glens provided the

Marcusens with copies of the documents in December 2004 and asserted at trial that they had delivered the originals at a later date. The Marcusens did not record the mortgage on lot 23 because they believed that a copy of the mortgage could not be recorded and because an attempt to do so would have required them to travel from their home in New Franken, Wisconsin, to Winona, Minnesota, and pay recording fees. Moreover, the Glens had assured them that recording was unnecessary and that doing so would only complicate a later sale.

The Marcusens advanced the Glens approximately $43,000 to finance construction on lot 6 between December 2004 and October 4, 2005. In December 2004, the Glens executed a $50,000 promissory note in favor of the Marcusens, which was secured by a mortgage on lot 6. The Glens provided the Marcusens with copies of the documents, again asserting at trial that they had delivered the originals at a later date. The Marcusens did not record the mortgage.

The Glens were unable to complete the home on lot 23 without additional funds. The Marcusens were unable to provide additional funds and had become apprehensive about their investments. Accordingly, the Glens sought financing from Winona National Bank (the Bank) in June 2005.[1] They obtained a $160,000 construction loan in return for executing a promissory note in favor of the Bank secured by a mortgage on lot 23. The Glens did not disclose the Marcusens' prior unrecorded mortgage and did not tell the Marcusens about the Bank's mortgage. The Bank recorded its mortgage in lot 23, thus taking priority over the Marcusens' unrecorded mortgage interest. The Glens paid the Marcusens $20,000 out of the $160,000 loan.

---

[1]The Glens had earlier applied for a credit extension in March 2005, which was denied. On the application, the Glens knowingly failed to disclose the Marcusens' unrecorded mortgages on lots 23 and 6.

The Glens sought additional financing to build another home, this one on lot 1. They hoped to build a smaller home that would sell quickly and help with their financial difficulties. In October 2005, they obtained a $35,000 loan from Sunny Acres Development, LLC (Sunny Acres) in return for a promissory note secured by a mortgage on lot 6. The Glens failed to disclose the Marcusens' prior unrecorded mortgage and failed to tell the Marcusens about Sunny Acres' mortgage. Sunny Acres recorded its mortgage, thus taking priority over the Marcusens' unrecorded mortgage on lot 6.

The Glens' real estate development projects continued to deteriorate. In July 2007, the home on lot 23 was sold, with the proceeds being sufficient to satisfy only the Bank. The Glens were unable to make payments to Sunny Acres, resulting in the foreclosure of the mortgage on lot 6, with the Marcusens receiving nothing on their $50,000 promissory note.

The Glens filed for Chapter 7 bankruptcy in June 2008. The Marcusens filed an adversary proceeding seeking to have their debt excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B). After a trial, the bankruptcy court found that the evidence was insufficient to show that the Glens had intended to defraud the Marcusens when they invested, but held that the Glens had defrauded the Marcusens by obtaining financing that destroyed the value of their equity in lots 23 and 6. On appeal, the BAP reversed, ruling that the Glens had not made misrepresentations to the Marcusens at the time the later mortgages were obtained, and that even if they had, the Glens obtained no money or property from the Marcusens at that later time.

## I. Discussion

The Marcusens contend that the BAP erred in reversing the bankruptcy court's determination that the Glens' debt was excepted from discharge pursuant to § 523(a)(2)(A). We apply the same standard of review as the BAP, reviewing the

-4-

bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. Capital One Auto Fin. v. Osborn, 515 F.3d 817, 821 (8th Cir. 2008). "A finding is clearly erroneous when although there is evidence to support it . . . the reviewing court is left with the definite and firm conviction that a mistake has been committed." DeBold v. Case, 452 F.3d 756, 761 (8th Cir. 2006) (citations omitted).

Section 523(a)(2)(A) excludes a debt from discharge "for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained by*—(A) false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (emphasis added). Thus, only debt that is obtained by fraudulent conduct is within the scope of § 523(a)(2)(A).

The Marcusens contend that the Glens fraudulently obtained the Marcusens' equity by concealing that the Glens had granted mortgages to Winona Bank and Sunny Acres. The Glens contend that the omission was not contemporaneous with the Marcusens' investment and thus any subsequent reduction in value of the Marcusens' equity is not within the scope of § 523(a)(2)(A). The bankruptcy court held that the Marcusens original investments in the real estate projects were not procured by fraud and thus did not satisfy § 523(a)(2)(A).[2] It concluded, however, that the Glens' subsequent action—executing mortgages on the real estate in favor of the Bank and Sunny Acres without informing the Marcusens—was the functional equivalent of obtaining money or property by fraud because it destroyed the Marcusens' equity in the property.

To succeed in having the Glens' debt excepted from discharge pursuant to § 523(a)(2)(A), the Marcusens were required to prove that the Glens obtained money or property from them concurrent with the Glens' misrepresentation. § 523(a)(2)(A);

_____

[2]The bankruptcy court found that the evidence failed to show that the Glens intended to defraud the Marcusens when the Marcusens disbursed funds to the development projects. The Marcusens' suggestions to the contrary are unfounded.

-5-

see, e.g., In re Dougherty, 179 B.R. 316, 322 (Bankr. M.D. Fla. 1995) ("In other words, the debtor himself must have obtained the money or property and he must have received it from the claimant." (citation omitted)); Matters of Grubbs, 9 B.R. 499, 501 (M.D. Ga. 1981) ("Obtaining money is capable of but one meaning, that is the direct transfer of money from a creditor to a debtor." (quotations omitted)). The Marcusens did not provide money, property, services, or an extension, renewal, or refinancing of credit at the time the Glens granted the mortgages to obtain money from the Bank and Sunny Acres. Any misrepresentations that occurred at that time were made to the Bank and to Sunny Acres and not to the Marcusens.

Like the BAP, we conclude that the bankruptcy court erred in holding that a reduction in value of the Marcusens' equity was sufficient to satisfy § 523(a)(2)(A)'s requirement that money or property must have been obtained from the Marcusens. Any reduction in the value of the equity to the Marcusens resulted from their failure to record the mortgage on lots 23 and 6 and not from any conduct on the Glens' part that could be characterized as fraudulent within the meaning of § 523(a)(2)(A).

## III. Conclusion

The BAP's judgment is affirmed.

_____