# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

—————————

No. 11-6006

—————————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| In re: David L. Juve; Mona L. Juve, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| David H. Heide; | * | Appeal from the |
| | * | United States |
| Plaintiff - Appellee, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Leah T. Heide; Kaia E. Heide, | * | |
| | * | |
| Plaintiffs. | * | |
| | * | |
| v. | * | |
| | * | |
| David L. Juve, | * | |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| Mona L. Juve, | * | |
| | * | |
| Defendant. | * | |

—————————

Submitted: July 22, 2011
Filed: September 16, 2011

—————————


Before SCHERMER, FEDERMAN and NAIL, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Defendant, David L. Juve (the "Debtor," and together with Mona L. Juve, the "Debtors"), appeals from the bankruptcy court's grant of summary judgment to plaintiff, David A. Heide (the "Creditor"), holding a debt in the amount of $400,000, nondischargeable pursuant to §523(a)(2)(A) of Title 11 of the United States Code (the "Bankruptcy Code'). We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse and remand this matter to the bankruptcy court for further proceedings consistent with this opinion.

## ISSUE

The issue on appeal is whether the bankruptcy court properly granted summary judgment to the Creditor.

## BACKGROUND

Viewed in the light most favorable to the Debtor as the non-moving party, *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008), the facts are as follows. The Creditor worked onsite at Imports Plus, Inc., the used car dealership operated by the Debtor. The Creditor began to loan money for the purchase of inventory.[1] Initially, the Creditor loaned funds for one car at a time at an interest rate of 10% plus a fee of $50 per vehicle. After the Creditor had advanced a significant sum of money, the parties changed the arrangement so the Creditor received monthly interest for the financing of multiple vehicles. Unfortunately, there never existed a written agreement regarding the loans.

The Debtor explained that by the end of December 2004, the Creditor had loaned approximately $300,000 to finance the purchase of vehicles. Although the

---

[1] The parties refer to the advance of funds as being from the Creditor in some instances and as being from the Creditor and his wife in other instances. It appears that at least the majority of the loans were from a joint bank account of the Creditor and his wife. Because this appeal only concerns summary judgment granted in favor of the Creditor, we refer to the advance of funds as being from the Creditor.

checks from the Creditor were made to Imports Plus, Inc., the Creditor still claims that the Debtor was the party with whom he entered into the transactions. The Debtor was the majority shareholder of Imports Plus, Inc. during a significant portion of the time when the Creditor financed the purchase of the vehicles.

According to the Debtor's best recollection, by the end of 2004, there existed unencumbered cars on the dealership's lot worth at least $300,000. In 2007, the Creditor's daughter, Kaia Heide, financed $50,000 of vehicles for the dealership. She never dealt directly with the Debtor but, instead, gave her check to her father who forwarded it to the Debtor.

The parties agree that the Creditor continued to receive his regular monthly interest payments through 2008. In 2008, the Creditor loaned an additional $50,000 for the purchase of vehicles from a Las Vegas auction. The Debtor and Creditor agreed that the Creditor would receive interest plus a share of the profits from the resale of those cars. Again, the Creditor's loan of $50,000 was made by two checks payable to Imports Plus, Inc. The Las Vegas auction cars were never purchased. Ultimately, the Debtor was unable to repay the amounts invested by the Creditor over the years.

The Debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, the Creditor, his wife, Leah T. Heide, and their daughter, Kaia E. Heide (together, the "Plaintiffs"), brought an action seeking to except certain debts allegedly owed to them from the Debtors' discharges under §523(a)(2)(A), and seeking other relief.[2] The bankruptcy court granted summary judgment in favor of only the Creditor on his §523(a)(2)(A) claim against only the Debtor, ruling that "the total debt owed to [the Creditor] by the [Debtor] in the amount

_____

[2] The Plaintiffs also sought relief under §§523(a)(4) and (a)(6), and they asked for denial of the Debtors' discharges in their entirety under multiple subsections of §727(a).

of $400,000, arising out of [the Creditor's] loans to purchase automobiles for resale, is nondischargeable in main case 09-60966."[3]

After the bankruptcy court entered its summary judgment order, the parties to the adversary proceeding entered into a stipulation for the entry of a money judgment and a judgment of nondischargeability, and they also agreed to the dismissal of the remaining claims that were scheduled for trial. They stipulated that the Creditor would have a judgment against the Debtor in the amount of $400,000; that the judgment would be excepted from the Debtor's discharge under §523(a)(2)(A); that all remaining counts of the complaint would be dismissed with prejudice; and that the Debtor's appeal rights would be preserved. On January 19, 2011, the bankruptcy court approved the stipulation and entered its order and judgment in favor of the Creditor in the amount of $400,000 as a non-dischargeable debt and dismissed all remaining counts in the complaint with prejudice.

## STANDARD OF REVIEW

We "review [ ] the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell),* 637 F.3d 855, 863 (8th Cir. 2011) (quoting *Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523, 525 (8th Cir.1998) (internal marks omitted)). The bankruptcy court's grant of summary judgment is reviewed de novo. *U.S. v. Horras,* 443 B.R. 159, 161-62 (B.A.P. 8th Cir. 2011) (citing *Taylor v. St. Louis County Bd. of Election Commissioners,* 625 F.3d 1025, 1028 (8th Cir.2010)).

---

[3] The bankruptcy court denied the Plaintiffs' motions for summary judgment on the §§523(a)(4) and (a)(6) counts of their complaint and granted summary judgment to the defendants on those counts. The Plaintiffs' §523 claims against Mona Juve were dismissed, and a motion for summary judgment filed by Kaia and Leah Heide was dismissed. Allegations under §727(a) in the complaint were to proceed to trial.

## DISCUSSION

### 11 U.S.C. § 523(a)(2)(A)

Bankruptcy Code § 523(a)(2)(A) provides, in pertinent part, that a discharge:

> does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A). "To prove non-dischargeability under § 523(a)(2)(A), a creditor ordinarily must show, by a preponderance of the evidence, (1) the debtor made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, which (5) proximately caused the creditor damage." *Treadwell,* 637 F.3d at 860 (citing *R & R Ready Mix v. Freier (In re Freier),* 604 F.3d 583, 587 (8th Cir.2010)).

### Summary Judgment

Summary judgment is appropriate in this case if there was no genuine issue as to any material fact and the moving party was entitled to a judgment as a matter of law. Fed. R. Civ. P. 56, applicable herein pursuant to Fed. R. Bankr.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We view the summary judgment record in the light most favorable to the nonmoving party and afford that party all reasonable inferences. *Patch*, 526 F.3d at 1180. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* at 1180 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal marks omitted)). Once the moving party has carried its burden of demonstrating the absence of a genuine issue of fact, the nonmoving

party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*., 475 U.S. at 587. An issue of fact must be based on specific factual allegations. *See Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728, 734 (8th Cir. 2011) (citation omitted).

Summary judgment was improper in this case because there existed fact issues regarding whether: (1) the financing arrangement should be treated as if it was between the Debtor and the Creditor, or between Imports Plus, Inc. and the Creditor; and (2) whether the Debtor obtained the majority of funds from the Creditor at the time of the alleged misrepresentation.

## To Whom Were the Loans Made?

The undisputed facts, when viewed in the light most favorable to the Debtor as the non-moving party, do not support a determination that the Creditor's financing arrangement was with the Debtor. Absent any loan documents, we place great weight on the fact that the Creditor's checks were payable to Imports Plus, Inc., making it the borrower and not the Debtor. In response to the Debtor's argument that the amount owed to the Creditor was a debt of the corporation, rather than of the Debtor individually, the bankruptcy court commented:

> The [Debtor] argues the debt at issue is exclusively a corporate debt. This is a non-issue, however, because David Juve personally entered into the agreements with David Heide and took on the liability individually, regardless of the fact he was operating a business at the time and that the funds were intended to be used for the business. Under the circumstances, piercing the corporate veil in this case is appropriate in any event. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997).

State law governs the decision of whether to pierce the corporate veil. *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir.1997). When deciding whether to pierce the corporate veil using an "alter ego" or "instrumentality" theory, Minnesota courts apply a two-part test that was adopted by the Minnesota Supreme Court in *Victoria Elevator Co. of Minn. v. Meriden Grain Co.*, 283 N.W. 2d 509, 512 (Minn. 1979).[4] The first prong of the test examines "the relationship between the individual and the entity." *United States v. Scherping*, 187 F.3d 796, 802 (8th Cir. 1999). It requires consideration of certain factors including:

> insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as mere facade for individual dealings.

*Victoria Elevator*, 283 N.W. 2d at 512 (citation omitted). "Disregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness." *Scherping*, 187 F.3d at 802 (quoting *Victoria Elevator*, 283 N.W.2d at 512 (internal quotation marks omitted)).

---

[4] The court in *Victoria Elevator* acknowledged that it had "previously relied on findings that the corporate form was used to accomplish a fraudulent purpose to impose personal liability." 283 N.W.2d at 512. It then set forth the test for imposing personal liability absent fraud, using an alter ego theory. *Id.* In this case, the bankruptcy court's decision to pierce the corporate veil seems to be premised on an alter ego theory. The sole case cited by the bankruptcy court in its discussion of piercing the corporate veil discussed the *Victoria Elevator* court's two-prong test. *See Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997). Moreover, the record was insufficient to prove that the Debtor used the corporate form for a fraudulent purpose.

The Debtor explained, and the Creditor has not disputed, that the checks from the Creditor were made to Imports Plus, Inc., rather than to the Debtor individually. The Creditor maintains that, regardless of the checks, he entered into the financing arrangements with the Debtor and the Debtor was the party with whom he dealt throughout the years. Unfortunately, there was no written agreement to document the lending relationship. Other than the statements set forth above, the bankruptcy court did not provide findings for its decision that the agreement was between the Debtor and the Creditor, and the Creditor was unable to cite to undisputed facts that would prove that he was entitled to judgment as a matter of law on this issue. We agree with the Debtor that, without more, summary judgment was not proper and the matter should proceed to trial.

## The Alleged Fraud

The Creditor alleged that the Debtor made misrepresentations to him throughout the course of their relationship. It is these misrepresentations that were the basis for the allegations of fraud with respect to the $300,000 advanced by the Creditor through 2004.[5] Thus, with respect to the majority of the debt owed to the Creditor, the Creditor claims that the Debtor misrepresented to the Creditor that there was sufficient equity in the inventory at his car dealership that the Debtor could liquidate and repay the amounts owed to the Creditor. The bankruptcy court said that "it is indisputable (and in fact not meaningfully controverted) that [the Debtor] represented to [the Creditor], either overtly or by omission, that the available equity in the inventory was at any given time sufficient to satisfy [the] total outstanding liability to [the Creditor]."

---

[5] The Creditor also alleged that the Debtor misrepresented in 2008 that he would purchase certain vehicles at the Las Vegas auction, but that he never purchased those vehicles. We do not address the alleged misrepresentation regarding the cars at the Las Vegas auction because the Creditor's request for summary judgment should have been denied regardless of any representation he allegedly made at the Las Vegas auction. For the same reason, we also do not address the bankruptcy court's decision to add the $50,000 loaned by Kaia Heide to the amount of the judgement awarded to David Heide.

The Debtor maintains, however, that he did not represent to the Creditor that the cars on the lot were unencumbered or that the cars could be liquidated to pay the debt to the Creditor.

Even if we were to accept the Creditor's contention that the alleged misrepresentations were made by the Debtor, the limited record on summary judgment suggested that the Debtor did not *obtain* $300,000 of the funds *by fraud*. *See Marcusen v. Glen (In re Glen)*, 639 F.3d 530, 532 (8th Cir. 2011) ("[O]nly debt that is obtained by fraudulent conduct is within the scope of § 523(a)(2)(A)."). At his deposition, the Debtor testified that in 2004, a time when $300,000 of the debt had been incurred, there still existed unencumbered vehicles onsite worth at least $300,000. It appears that the alleged misrepresentations would have been made *after* the Creditor loaned $300,000 of the funds and, therefore, the Creditor could not have relied on the Debtor's alleged misrepresentation at the time he made such loans. But to establish a cause of action under §523(a)(2)(A), the Creditor must show that the Debtor obtained the money from the Creditor "concurrent with" the Debtor's misrepresentations. *Id.* at 533 (citations omitted).

The Creditor claimed that the Debtor was required to tell the Creditor that the equity in the vehicles was decreasing and that the Creditor suffered a loss because the vehicles did not have value, resulting in the Debtor's inability to repay the Creditor's investment. We disagree. The Debtor did not have an ongoing duty under §523(a)(2)(A) to advise the Creditor regarding whether his interest in the vehicles was protected and the loss of equity in the vehicles would not support a determination of fraud under §523(a)(2)(A). *See Glen,* 639 F.3d at 533 (reduction in value of creditors' equity after money was loaned did not result from conduct of debtors that was fraudulent and was not sufficient to show that money or property was obtained from the creditors).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the bankruptcy court and remand this matter to the bankruptcy court for further proceedings consistent with this opinion.

———————————————