

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LAURA A. VALENTE,<br>    Debtor. | BAP No.  SC- 21-1225-SFB<br><br>Bk. No. 19-01594-CL7 |
| LAURA A. VALENTE,<br>    Appellant,<br>v.<br>THOMAS NOWLAND,<br>    Appellee. | Adv. No. 19-90056-CL<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Chief Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Creditor Thomas Nowland sued debtor Laura Valente and others on various claims to establish liability and the nondischargeability of Valente's debts to Nowland. Ultimately, only the fraud claims against Valente, and

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

dischargeability of those claims under § 523(a)(2)(A),[1] went to trial. The bankruptcy court rejected most of Nowland's claims but held Valente liable for her participation in fraudulent transfers that stripped their jointly-owned business, Valente Hair & Co., Inc. ("VHCI"), of assets subject to Nowland's claims. The court ruled that Nowland was entitled to a nondischargeable judgment for the value of the assets VHCI transferred to a new entity, Valente Bella Industries, Inc. (VBI). The court valued VHCI's assets at $41,000 based on VBI's subsequent sale of its hair salon business to a third-party.

Valente does not challenge the bankruptcy court's finding that she is liable to Nowland for the value of the assets that she caused VHCI to transfer to VBI. She only questions Nowland's standing and the amount of her liability. We reject her standing argument. As to damages, she argues that the bankruptcy court erred by relying on VBI's sale price to establish Nowland's damages because VHCI's transfer and VBI's sale were not the same. On this record, given certain critical gaps in the findings, we agree. Accordingly, we must VACATE and REMAND for additional findings explaining how and why the price at which VBI sold its assets reasonably reflects the value of the assets that VHCI transferred to VBI. Alternately, the bankruptcy court may consider whether the record supports a viable

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

alternative method for valuing some or all of the transferred assets.

**FACTS**

Valente and Nowland met in 2014 through an internet dating website and began regularly seeing each other. Nowland provided Valente with a $5,000 monthly allowance, a new car, help with her personal rent, and occasional gifts and vacations.

In mid-2015, Valente shared with Nowland her aspiration to open a hair salon. Valente's initial discussions with Nowland led her to incorporate VHCI.[2] She asked Nowland to invest in the new business. He agreed and invested $25,000 in VHCI in exchange for half of the equity in the fledgling company. Valente held the other 50% interest. They further agreed that Valente would serve as VHCI's chief executive officer, president, secretary, and manager, and he would serve as the company's chief financial officer.

In September 2015, Valente and Nowland agreed to rent a vacant shop on Girard Avenue in La Jolla ("Girard Salon"). They renovated the shop and opened for business in February 2016. Both before and after the salon opened, Nowland made dozens of small infusions of capital to VHCI, usually ranging from $1,000 to several thousand dollars. Nowland treated the transactions as loans and required Valente to sign promissory notes on

---

[2] The record references a host of other business entities and fictitious business names affiliated with Valente that she used for various purposes. However, given the limited scope of this appeal, only VHCI and VBI are relevant to our analysis.

behalf of VHCI. Nowland did not, however, require her to co-sign any of the notes individually or to guarantee the debt. The largest individual loan he made was $15,000 in February 2016.

By the end of June 2016, Nowland stopped infusing capital into VHCI and began to sever his ties with VHCI. He formally resigned as VHCI's chief financial officer and had no ongoing active role in the business by March 2017. By the time he resigned from VHCI, it had borrowed more than $200,000 from Nowland. From June 2016 through December 2018, VHCI continued to own and operate the Girard Salon without any additional funding from Nowland. The bankruptcy court noted the lack of evidence establishing the salon's operating income and expenses during this period. Nonetheless, the court found that in 2017 Valente contributed to VHCI no less than $68,111.50 she had received from a new benefactor to keep the salon running.

Despite the lack of specific evidence as to VHCI's income and expenses, Valente testified that generally the business incurred roughly $30,000 in monthly expenses but generated $20,000, and often less, in monthly revenue. The court noted that VHCI struggled to pay its employees. By the end of 2018, VHCI could not pay its rent and was evicted. Based on Valente's testimony, the court concluded that VHCI "failed as a going concern," and that "[t]he monthly shortfall, combined with VHCI's eviction, eventually resulted in the business's failure." In December 2018, the Girard Salon closed its doors and ceased operations.

While the Girard salon was closing its doors, Valente was working on "moving" the salon to a new location on Prospect Street in La Jolla ("Prospect Salon"). The Prospect Salon was owned and operated by VBI, which in turn was owned by Valente's father. He incorporated VBI in December 2018, "very shortly after VHCI was evicted and closed its doors." According to Valente, she did not have any ownership interest in VBI. Instead, she claims she merely worked for her father by providing the Prospect Salon with secretarial, marketing, and management services. Still, Valente was instrumental in transferring assets and staff from the Girard Salon to the Prospect Salon. Valente insisted that the Prospect Salon was new and had little or no connection to the Girard Salon, but VBI advertised the Prospect Salon as a "relocation" of the prior salon. Evidence at trial showed that VBI celebrated its commencement of operations with a "reopening party."

Valente oversaw a number of renovations and improvements to the leased property that became the Prospect Salon. Because the prior tenant operated a barber shop, VBI could not open its business until a significant amount of work was completed. The landlord worked with Valente to resolve several tenant improvement and permitting issues. To place VBI's start-up costs in context, Valente emphasized that VHCI had incurred roughly $100,000 to improve and stock the Girard Salon before it could open, suggesting that VBI likely spent a similar amount on the Prospect Salon. She evidently proved that her father spent at least $18,000 on these

types of expenses but contends that VBI spent thousands of dollars more to open the Prospect Salon. On the other hand, Nowland argued that the funds came from VHCI, though he failed to link VBI's improvements and expenditures to VHCI's cash.

The Prospect Salon opened its doors for business sometime in early 2019. Valente filed her chapter 7 case in March 2019. VBI sold the Prospect Salon to a third party, Ediane Crawford, in July 2019 for $41,000. The sale included the salon's assets, an assignment of the salon's lease, and a three-year noncompete agreement. Crawford continued to operate a hair salon from the Prospect Street premises and continued to employ some of VBI's staff.

In June 2019, Nowland filed his adversary proceeding against Valente, her father, and some of their affiliated entities, including VBI. Nowland stated claims under § 523(a)(2)(A) and (a)(4) against Valente. He additionally alleged a fraudulent conveyance under Cal. Civ. Code § 3439, et seq. against all defendants. However, by the time the court entered its pretrial order in February 2021, Nowland had abandoned or dismissed all of his claims and all of the defendants except for his § 523(a)(2)(A) claim against Valente.

The theories underlying the surviving claim were twofold. Part of Nowland's claim was based on fraudulent inducement. He alleged that Valente intentionally misrepresented that she desired to own and operate her own hair salon and presented him with a false business plan and other

6

solicitation materials ostensibly for that purpose. Nowland maintained that, in reality, she sought to induce him to invest money in a sham business for the purpose of using the funds for her personal expenses and her other, separate business ventures. According to Nowland, he was fraudulently induced to invest $305,000 in VHCI, all of which he lost.

The other part of the § 523(a)(2)(A) claim was based on "actual fraud." Nowland alleged that Valente transferred some of VHCI's cash to VBI and used those funds to pay some of the Prospect Salon's startup expenses. He also alleged that she transferred additional amounts of VHCI's cash to herself and other entities she owned and controlled. Additionally, he maintained that by moving the business of the Girard Salon over to the locale of the Prospect Salon, Valente fraudulently transferred VHCI's non-cash assets, including "furniture, fixtures, equipment, product lines, intellectual property, licensed software, internet domains, and marketing domains." He also argued that Valente misappropriated VHCI's proprietary customer lists. Nowland asserted that all of these transfers were part of Valente's intentional scheme to put VHCI's cash and other assets out of the reach of himself and its other creditors.

The bankruptcy court held eleven days of trial over the course of two months. After the parties filed closing briefs, the court issued its 42-page findings of fact and conclusions of law. It found for Valente on all but one aspect of Nowland's § 523(a)(2)(A) claim. It held that she actively

7

participated in, orchestrated, and coordinated the fraudulent transfer of VHCI's non-cash assets to VBI with the intent, and for the purpose, of cheating Nowland and VHCI's other creditors out of being able to collect from the defunct corporation's assets.

As for the damages resulting from the fraudulent transfer scheme, the bankruptcy court noted that under California law the extent of a defendant's liability is limited by the value of the assets transferred. According to the court, the only reliable evidence of the value of "the salon" was the $41,000 purchase price Crawford paid to VBI. The court further found that neither party presented any evidence that "the salon" had increased or decreased in value from the time of the fraudulent transfers to the time of sale. Based on these findings, the bankruptcy court entered a $41,000 judgment in favor of Nowland on his § 523(a)(2)(A) claim.

Valente timely filed a motion to alter the court's factual findings and conclusions of law under Civil Rule 59(e), as made applicable by Rule 9023. She argued that there was insufficient evidence to enable the court to trace and value the tangible and intangible assets supposedly transferred from the Girard Salon to the Prospect Salon. She also argued that she was entitled to setoff or recoup the $68,111.50 she invested in VHCI in 2017 against her fraudulent transfer liability to Nowland to eliminate that debt. She further requested that the court equitably adjust the $41,000 value of VHCI's transferred assets to deduct the value of VBI's assignment of the

8

lease for the Prospect Salon, her three-year covenant not to compete with Crawford's salon, and VBI's costs to improve the Prospect Salon. Finally, Valente advanced another series of arguments generally concerning Nowland's standing and challenging to whom any liability was properly owed.

The bankruptcy court rejected Valente's Civil Rule 59(e) arguments in its order denying the motion on October 4, 2021. Valente timely appealed from both that denial and the underlying nondischargeability judgment.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it excepted from discharge under § 523(a)(2)(A) Valente's personal liability for her role in fraudulently transferring VHCI's assets to VBI?

## STANDARD OF REVIEW

"We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo." *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008) (cleaned up).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). A finding of fact is not clearly erroneous

9

if a permissible view of the evidence of record supports the finding. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

## DISCUSSION

**A.    The bankruptcy court's reasoning in granting relief.**

Much of the confusion surrounding this appeal results from a misunderstanding of the bankruptcy court's decision. The bankruptcy court found that VHCI fraudulently transferred its assets to VBI and held Valente personally liable for the value of the transferred assets based on her active participation in that scheme. California's Uniform Voidable Transactions Act imposes fraudulent transfer liability to transferees or "transfer beneficiaries." Cal. Civ. Code § 3439.08;[3] *see also Lo v. Lee*, 24 Cal. App. 5th 1065, 1072–73 (2018). As the bankruptcy court recognized, Valente did not qualify as either. But California case law recognizes that fraudulent transfers constitute tortious conduct. *Filip v. Bucurenciu*, 129 Cal. App. 4th

---

[3]    Section 3439.08 provides in relevant part:

(b) To the extent a transfer is avoidable in an action by a creditor under paragraph (1) of subdivision (a) of Section 3439.07, the following rules apply:

(1) Except as otherwise provided in this section, the creditor may recover judgment for the value of the asset transferred, as adjusted under subdivision (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against the following:

(A) The first transferee of the asset or the person for whose benefit the transfer was made.

10

825, 837 (2005). Fundamentally, individuals are liable for their own tortious conduct even if acting in a representative capacity.[4] *Mars v. Wedbush Morgan Sec., Inc.,* 231 Cal. App. 3d 1608, 1616 (1991) (Agents are liable for the fraud of their principals when the agent "knows of or participates in the fraudulent act."); *see also Frances T. v. Village Green Owners Ass'n*, 42 Cal.3d 490, 504-05 (1986) ("The reason for this rule is that otherwise, a director could inflict injuries upon others and then escape liability behind the shield of his or her representative character, even though the corporation might be insolvent or irresponsible."). Thus, an individual that perpetrates a fraudulent transfer can be held individually liable for the resulting damages even if she was not the transferee or beneficiary. S*ee, e.g., Sanger v. Ahn*, Case No. 18-cv-07204-JCS, 2019 WL 1229660, at * 7 (N.D. Cal. Mar. 15, 2019) (holding that an active participant who conspires to commit a fraudulent transfer may be held liable even if not the transferee or beneficiary of the transfer); *Filip*, 129 Cal. App. 4th at 837 (same).

Not only was Valente the person responsible for making the fraudulent transfers, she also was the person responsible for the transferee

---

[4] Under California agency law, a plaintiff sufficiently pleads fraud against a defendant agent by alleging that the agent "had knowledge of, and participated in" the principal's fraud scheme. *PowerPC Comercio De Equipamentos De Informatica LTDA v. Sky Glob. Servs. Inc.*, Case No. 8:18-CV-614-JLS-JDE, 2018 WL 6521497, at *3 (C.D. Cal. Aug. 8, 2018); *see also Aleo Solar Deutschland GmbH v. Innovative Mech. & Elec., Inc.*, Case No. 2:12-CV-2629-ODW SPX, 2012 WL 3709632, at *3 (C.D. Cal. Aug. 28, 2012) ("an agent who knowingly participates in a fraudulent transaction is responsible for his or her own misconduct" (citing *Jacobs v. Freeman*, 104 Cal. App. 3d 177, 193 (1980))).

receiving the fraudulent transfers. As the bankruptcy court recognized, Valente "orchestrated and actively participated in both causing VHCI to make the transfer and in VBI's receipt." Thus, Valente was liable for her tortious conduct in actively participating in the fraudulent transfer.

The bankruptcy court held that Valente's debt for her participation in the fraudulent transfer was nondischargeable under § 523(a)(2)(A) in light of *Husky International Electronics, Inc. v. Ritz*, 578 U.S. 356, 365 (2016) ("*Husky*"), and *Bonnett v. Moirbia Scottsdale, LLC (In re Bonnett)*, BAP No. AZ-19-1293-BTL, 2020 WL 4371881, at *4 (9th Cir. BAP July 30, 2020), *aff'd sub nom. Bonnett v. Moirbia Scottsdale, LLC*, 860 F. App'x 473 (9th Cir. 2021). *Husky* held that a debt traceable to the debtor's prepetition receipt of a fraudulent transfer is nondischargeable when the debtor received the transfer with the requisite culpable intent. 578 U.S. at 365.

Following and elaborating on *Husky*, *Bonnett* affirmed the bankruptcy court's determination that a prepetition judgment entered against the debtor for receipt of a fraudulent transfer was nondischargeable under § 523(a)(2)(A) "given the state court's affirmative finding that she knowingly participated in the fraudulent transfer scheme with [the transferor]." 2020 WL 4371881, at *6. *Bonnett* described the state of mind required to bring such debt within § 523(a)(2)(A):

> to succeed on a [§ 523(a)(2)(A)] claim against the debtor-recipient [of a fraudulent transfer] the creditor must prove:

12

> 1) the transferor conveyed the property with the intent to hinder or delay his creditors; and 2) the transferee was a participant in the fraud, such that it could be said that the debtor engaged in deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.

*Id.* at *4 (cleaned up).

Though Valente is neither the transferor nor the transferee, *Bonnett*'s culpability standard still is apposite. The bankruptcy court found that Valente's state of mind satisfied both prongs of the *Bonnett* standard. In applying the first prong examining the transferor's intent, the court explained that nearly all of the badges of fraud for an actual fraudulent transfer identified in Cal. Civ. Code § 3439.04(b) were present and supported the finding of an actual intent to hinder, delay, or defraud creditors. Applying the second *Bonnett* prong, the court found that Valente was an active and knowing participant in the fraudulent transfer scheme and thereby engaged in "deceit, artifice, trick, or design involving direct and active operation of the mind, used to cheat another." Indeed, the bankruptcy court found that she was the impetus for the fraudulent transfer scheme and that she orchestrated and coordinated it. This led the court to conclude that "the primary purpose of [Valente's] efforts was to cheat [Nowland] and VHCI's other creditors out of their ability to collect from the now defunct corporation." *Compare In re Bonnett*, 2020 WL 4371881, at *6, *with Reisman v. Ingredients Int'l, LLC (In re Reisman)*, BAP No.

13

NV–05–1471–MoSMa, 2006 WL 6811010, at *4 (9th Cir. BAP Aug. 18, 2006) ("Moreover, Ingredients presented no evidence that Debtor was a knowing and active participant in a scheme to defraud Ingredients in particular.").

Valente has not challenged the court's determination that both VHCI and VBI, acting through Valente, fraudulently transferred assets from VHCI to VBI, or her active and knowing participation in those fraudulent transfers. Far from challenging the court's application of *Husky* and *Bonnet*, she has incorporated and adopted the portion of the bankruptcy court's decision applying these precedents to this case.[5] Rather, she limits her challenges on appeal to Nowland's standing and the computation of damages. Consequently, for purposes of our analysis and review, we assume without deciding that *Husky* and *Bonnett* apply and accept that Valente is personally liable for VHCI's fraudulent transfers. *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

With these limitations on our review in mind, we proceed to examine Valente's jurisdictional and procedural arguments first, and then move on to her substantive arguments.

---

[5] This is consistent with Valente's position during the trial before the bankruptcy court.

**B.      Valente's jurisdictional and procedural arguments.**

Valente argues that Nowland lacks standing for a variety of reasons. We address each in turn.

**1.      Valente's standing arguments ignore Valente's personal liability for her fraud.**

First, Valente claims that under § 523(a)(2)(A), the debtor must have directly received money or property from the creditor and became directly indebted as a result.[6] To support her argument, she cites *Heide v. Juve (In re Juve)*, 455 B.R. 890 (8th Cir. BAP 2011), and *Aslakson v. Freese (In re Freese)*, 472 B.R. 907 (Bankr. D.N.D. 2012). But Valente's reliance on these decisions is misplaced. Unlike here, neither of those debtors were personally liable for the debt at issue. *In re Juve*, 455 B.R. at 894 ("The undisputed facts, when viewed in the light most favorable to the Debtor as the non-moving party, do not support a determination that the Creditor's financing arrangement was with the Debtor."); *In re Freese*, 472 B.R. at 919 ("[T]here is insufficient evidence to show that Debtor was the person who obtained the loan funds from Frandsen Bank, the repayment of which serves as the basis for [plaintiff's] section 523(a)(2)(A) claim."). In stark contrast, Nowland sought

---

[6] Valente characterizes this as a standing argument. But the argument merely raises a legal question of whether § 523(a)(2)(A) requires the debtor to directly receive the benefit of the fraud—and the related factual issue of whether Valente benefited from the transfers between VHCI and VBI. These are not jurisdictional issues, and Valente did not raise them at or before trial, so she arguably forfeited them. *See Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014). We address the argument, however, because the bankruptcy court ruled on this issue as part of its denial of Valente's Civil Rule 59(e) motion.

to hold Valente personally liable for her actions in fraudulently transferring VHCI's property to VBI. The resulting debt was obtained by Valente's fraud.

Contrary to Valente's argument, § 523(a)(2)(A) contains no requirement that the debtor directly receive anything from the creditor. In fact, § 523(a)(2)(A) does not require the debtor to receive the benefit of his or her fraud. So long as the debtor's liability arises from or is traceable to the fraud, the requirements for applying § 523(a)(2)(A) are satisfied. *Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998)). This is exactly the situation here.

### 2. Nowland had standing to pursue his nondischargeability action for fraud.

Valente next argues that Nowland lacked standing because his "avoidance action" belonged to her bankruptcy estate and as such could only be prosecuted by her chapter 7 trustee. In support, Valente cites cases like *In re Howrey LLP*, Case No. C 13-00981 SBA, 2014 WL 3899309, at *4 (N.D. Cal. Aug. 8, 2014), *JMS Labs Ltd. (U.S.A.) v. Silver Eagle Labs, Inc. (In re Lockwood)*, 414 B.R. 593, 602 (Bankr. N.D. Cal. 2008), and *California v. PG & E Corp. (In re Pacific Gas & Electric Co.)*, 281 B.R. 1, 13 (Bankr. N.D. Cal. 2002). These cases stand for the well-established proposition that once a bankruptcy case is filed it is the bankruptcy estate that owns any claim for fraudulent transfers made by the debtor. The estate owns the fraudulent transfer claims for the benefit of the estate as a whole, and such claims

must be pursued by the trustee or the debtor-in-possession unless the court orders otherwise. This rule has long been followed in the Ninth Circuit. *See, e.g., Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999); *Hansen v. Finn (In re Curry & Sorensen, Inc.)*, 57 B.R. 824, 827-28 (9th Cir. BAP 1986).

Valente misconstrues the basis of her liability. It was VHCI that fraudulently transferred its assets to VBI. The cases cited above would apply only if VHCI was in bankruptcy. It is not. Therefore, the cases Valente cites are inapposite. VHCI's creditors, including Nowland, retain their claims for fraudulent transfer under California law. Cal. Civ. Code §§ 3439.04(a) and 3439.07(a)(1). Nor was Valente the transferee. VBI was. Accordingly, VBI might be held liable under Cal. Civ. Code § 3439.08(b)(1)(A). In contrast, as explained above, Valente may be held personally liable under California law for her individual tortious conduct in perpetrating the fraudulent transfer. *Sanger*, 2019 WL 1229660, at * 7; *Filip*, 129 Cal. App. 4th at 837. Nowland clearly had standing to pursue his claim against Valente for knowingly and actively participating in the fraudulent transfers on behalf of the transferor and transferee.

Valente further argues that Nowland forfeited any derivative standing he might have exercised on VHCI's behalf to avoid and recover the assets fraudulently transferred to VBI. This argument similarly misconstrues Valente's liability for the fraudulent transfer scheme.

Nowland simply was not asserting any claim on behalf of VHCI. As such, Valente's derivative standing argument fails.

### 3. VHCI was not a necessary party to Nowland's nondischargeability action.

Valente also argues that the bankruptcy court should have dismissed Nowland's § 523(a)(2)(A) claim because he failed to join VHCI as a necessary party. Valente raised this argument for the first time in her closing brief after the trial. Specifically, Valente argued that VHCI was a necessary party for Nowland's alter ego claims. The bankruptcy court analyzed the necessary party argument as it applied to the alter ego/veil piercing claims. Ultimately, the court declined to grant Nowland any alter ego relief, and that claim is not part of this appeal. As a result, Valente's necessary party argument cannot have any meaningful effect on the parties' substantial rights on appeal. Even if we were to assume there was some merit to Valente's necessary party argument, any resulting error would be harmless. We must ignore harmless error. *Mbunda v. Van Zandt (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015). Accordingly, Valente's necessary party argument does not justify reversal.

### C. Valente's Substantive Arguments.

#### 1. The damages award for the fraudulently transferred assets.

The bankruptcy court held that Valente's liability for participating in the fraudulent transfer scheme was the same as the transferee's liability—

limited to the lesser of the value of the assets fraudulently transferred or the amount of the creditor's debt. Cal. Civ. Code § 3439.08(b)(1)(A); *see also Betancourt v. Ballmer (In re Betancourt)*, BAP No. CC–17–1016–KuLTa, 2017 WL 3482035, at *7 (9th Cir. BAP Aug. 14, 2017), *aff'd*, 756 F. App'x 741 (9th Cir. 2019). As the plaintiff, Nowland had the burden to identify the assets transferred and establish their value at the time of the transfer. Cal. Civ. Code § 3439.08(c), (f)(2); *Bank of Tex. v. Patel*, Case No. 16-CV-2692-BAS(BGS), 2017 WL 2985133, at *4 (S.D. Cal. July 12, 2017); *see also Hodess v. Wing Cheung Wong (In re Wing Cheung Wong)*, 802 F. App'x 280, 283 (9th Cir. 2020).

It is axiomatic that a plaintiff asserting a claim for fraudulent transfer must identify the assets wrongfully transferred and prove their value. Valente would require that Nowland produce an accounting of the specific assets transferred and their individual values. California law is not that exacting. Generally, "[w]here the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *GHK Assocs. v. Mayer Grp., Inc.*, 224 Cal. App. 3d 856, 873 (1990) (cleaned up).

Valente has not denied that she is liable for the value of the assets VHCI fraudulently transferred to VBI. Thus, the fact of damage has been established. The only remaining question is the **amount** of those damages

and hence the value of the transferred assets. Valente contends that Nowland failed to identify the specific assets VHCI transferred or prove their value. But the court found that VHCI transferred to VBI various "chairs, mirrors, cabinets, computers, desks, [hair products], . . . customer lists, marketing materials, . . . software, . . . and intellectual property." To the extent Valente testified to the contrary, the court rejected that testimony as not credible.

There is no question that VHCI transferred its assets to VBI, though neither Nowland, nor the court, specifically detailed those assets. More importantly, the court did not base its calculation of damages on the specific property VHCI transferred to VBI. Rather, it used VBI's sale to Crawford as the measure of damages. In doing so, it departed from any valuation of the specific assets transferred by VHCI and valued "the salon." In short, the bankruptcy court treated the salon business as the asset VHCI transferred to VBI and equated that to the business VBI sold to Crawford. The court believed that the two businesses were essentially the same given the relatively short lapse in time between VHCI's transfer and VBI's sale. It concluded that VBI's sale to Crawford was "[t]he best—and only reliable—indication of the salon's value . . . ."

Valente argues that VBI's sale was not an appropriate valuation of VHCI's assets for several reasons. As the bankruptcy court found, Crawford purchased: "(1) all of VBI's assets; (2) an assignment of the Prospect Street lease; and (3) an agreement not to compete with

20

Ms. Crawford's salon for three years." Even if we accept that "all of VBI's assets" were the same as the assets VHCI fraudulently transferred to VBI, the sale included the Prospect Street lease and an agreement not to compete. Neither the lease, nor the non-compete agreement, were part of VHCI's transfer of assets. The court did not address this discrepancy in its Findings of Fact and Conclusions of Law; it simply found the two salon businesses to be equivalent for purposes of valuing the asset(s) transferred by VHCI.

Valente's motion for reconsideration focused on the damages awarded for the fraudulent transfer claim. She challenged the identification and tracing of VHCI's assets, but she also argued that the $41,000 sale price had to be equitably adjusted downward to account for the lease and non-compete agreement included in VBI's sale. In its order denying the motion for reconsideration, the court relied on Crawford's trial testimony to conclude that the lease and non-compete agreement "were of inconsequential value, if any." Because it was addressing Valente's request for a reduction of the $41,000 purchase price, the court found that Valente had failed to carry her burden of proof to establish an equitable adjustment. *See Bank of Tex.*, 2017 WL 2985133, at *4 (citing Cal. Civ. Code § 3439.08(f)). But it was Nowland's burden to prove that the $41,000 was a factually appropriate measure of the value of the assets VHCI transferred. This required him, not Valente, to prove that that the $41,000 was a "reasonable basis of computation of damages" reflecting the value of

21

VHCI's assets at the time of the transfer despite the inclusion of the lease and non-compete agreement as part of the sale to Crawford. *See GHK Assocs.*, 224 Cal. App. 3d at 873.

This incorrect allocation of the burden of proof persuades us that we should remand so the bankruptcy court can consider again whether Nowland proved the value of VHCI's assets measured at the time it transferred them to VBI. Specifically, the question is whether the $41,000 sale price is sufficiently equivalent to the value of the assets fraudulently transferred—despite the lease, the leasehold improvements, the non-compete agreement, and any new furniture, fixtures, or equipment (for which Valente's father paid)—or if inclusion of these items fatally undermines the use of the $41,000 sale price as the measure of Nowland's damages.

We disagree with Valente that Nowland was required to specifically identify each of the items included in VHCI's asset transfer to VBI. But additional clarity is required. Without additional findings explaining whether and how Nowland met his burden of proving that the assets VHCI fraudulently transferred were reasonably valued at $41,000, we are unable to determine whether such findings would be clearly erroneous.[7] Therefore, we VACATE and REMAND. On remand, the bankruptcy court may also consider whether the evidence adduced at trial provides it with

---

[7] Importantly, the record available to us is incomplete. Neither party provided us with copies of the exhibits admitted into evidence.

an alternative means to reasonably value some or all of the assets transferred from VHCI to VBI.

## 2.    The remainder of Valente's arguments do not establish error.

Valente makes a handful of additional arguments that must be addressed. First, Valente contends that the bankruptcy court should have equitably adjusted the $41,000 value the court assigned to the assets transferred in light of the contributions she and others made to the Prospect Salon before it was sold to Crawford. Valente's equitable adjustment contentions are less than clear. They apparently are based on Cal. Civ. Code § 3439.08(c), which provides that when, as here, the defendant's fraudulent transfer liability is based on the value of the assets transferred, "the judgment shall be for an amount equal to the value of the asset[s] at the time of the transfer, subject to adjustment as the equities may require."

As the bankruptcy court noted, Valente did not raise the equitable adjustment contentions before or during trial, and she forfeited those contentions by waiting to raise them in her motion for reconsideration. We also agree with the bankruptcy court that Valente's participation in the fraudulent transfer precluded her from obtaining any equitable relief. *See Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 882 (9th Cir. 2008). That said, because we find that the court erred in valuing VHCI's transferred assets at $41,000, there is no further need to consider Valente's Cal. Civ. Code § 3439.08(c) equitable adjustment contentions.

23

Valente additionally argues that the debt she owes is subject to recoupment or offset given her contributions of money, time, and labor she made to VHCI. Both recoupment and setoff are equitable doctrines. *Sims v. U.S. Dep't of Health & Hum. Servs. (In re TLC Hosps.)*, 224 F.3d 1008, 1011 (9th Cir. 2000); (recoupment); *Newbery Corp. v. Fireman's Fund Ins.*, 95 F.3d 1392, 1399 (9th Cir. 1996) (setoff). As explained above, her participation in the fraudulent transfers precludes her recoupment and setoff arguments.

In any event, we also reject these arguments on alternate grounds as a matter of law. Setoff requires mutuality of debts, and recoupment additionally requires that the competing claims "arise from the same transaction or occurrence." *In re TLC Hosps.*, 224 F.3d at 1011. Competing claims arise from the same transaction or occurrence when they arise from events that are logically related given the parties' interactions. *Id.* (citing *Newbery Corp.*, 95 F.3d at 1403). Valente's setoff and recoupment arguments ignore that Valente's liability to Nowland arose as a result of her fraudulent transfer scheme. There was no evidence that Nowland was in any way indebted to Valente. This fatally undermines her setoff argument for lack of mutuality. Similarly, there was no logical relationship between the contributions she allegedly made to VHCI and her later fraudulent transfer liability to Nowland. Thus, Valente's setoff and recoupment arguments do not support reversal.

Finally, Valente claims that she is entitled to 50% of the nondischargeability judgment the bankruptcy court awarded in favor of

Nowland because she owned 50% of VHCI. This argument, once again, is based on the false premise that Nowland was attempting to avoid VHCI's transfer of assets. Valente apparently believes that in such an instance, she would be entitled to half of their value as co-owner of VHCI. This is simply wrong. As we previously explained, Nowland established Valente's liability for her participation in the fraudulent transfer scheme. The court awarded him damages based on the value of the transferred assets. It did not return any assets to VHCI. Additionally, Nowland's claim, and the resulting damages, were premised on his status as a creditor of VHCI, not as its co-owner. Accordingly, we reject as meritless this final argument of Valente's.

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's judgment, and we REMAND for a redetermination of damages in a manner consistent with this decision.

25